**In re McLEAN INDUSTRIES, INC., et al., Debtors.**

**John E. BRITTAIN, Hamood Ahmed Gazali, Julian Garcia, Abdo Nadeesh, Appellants,**

**v.**

**UNITED STATES LINES, INC., Bank of America National Trust and Savings Association and Citibank, N.A., as Co-Managers for Bank of America National Trust and Savings Association, Citibank, N.A., Chemical Bank, Bankers Trust Company, Continental Illinois National Bank and Trust Company of Chicago, Marine Midland Bank and Security Pacific National Bank, Appellees.**

**No. 1268, Docket 88–5006.**

United States Court of Appeals, Second Circuit.

Argued June 22, 1988.

Decided Sept. 13, 1988.

Alan H. Buchsbaum, New York City (Leon Stand, Semel, Patrusky & Buchsbaum, New York City, on the brief), for appellants.

Deborah A. Skakel, New York City (Alan W. Kornberg, Milbank, Tweed, Hadley & McCloy, New York City, on the brief), for appellee U.S. Lines, Inc.

Amy R. Wolf, New York City (Scott K. Charles, Theodore A. Ulrich, William S. Busch, Wachtell, Lipton, Rosen & Katz, Cadwalader Wickersham & Taft, New York City, on the brief), for remaining appellees.

Before NEWMAN, KEARSE, and CARDAMONE, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This bankruptcy appeal raises an issue of judicial administration concerning the order

of decision-making between this Court and the High Court of Singapore. The issue arises on an appeal by four seamen from a ruling of the District Court for the Southern District of New York (Richard J. Daronco, Judge) affirming orders of the Bankruptcy Court (Howard C. Buschman III, Judge) in Chapter 11 proceedings of the debtor, United States Lines, Inc. Those orders granted relief from the automatic stay, approved post-petition financing, and denied a request to compel bank creditors to subject to the jurisdiction of the bankruptcy court funds obtained in related court proceedings in Singapore. We conclude that the outcome of matters now within the jurisdiction of the High Court of Singapore might well render moot the substantive issues in the controversy before us and for that reason have concluded that the appropriate course is to dismiss this appeal, without prejudice to reinstatement, to afford that Court an opportunity to rule first on the matters before it.

The appellants are four seamen injured in separate incidents during 1985 and 1986 while aboard three different vessels of the debtor. They have asserted claims for $1,000,000, $800,000, $600,000, and $22,000. The injuries are covered by insurance policies of the debtor containing a $100,000 per case deductible clause. Under the terms of the policies the insurer is not liable if the debtor is unable to satisfy the deductible.

The debtor filed for protection under Chapter 11 in November 1986. Among the creditors were several banks, which are the appellees here. The banks had issued letters of credit to facilitate the purchase by United States Lines of twelve container ships. As security for the letters of credit, the banks received a first preferred ship mortgage on each vessel.

In December 1986 the vessels on which the seamen were injured and on which the banks held a first preferred ship mortgage were arrested in Singapore on writs issued by the High Court of Singapore upon com-

plaints of local creditors who had supplied products and services. Thereafter, the banks requested and received from the Bankruptcy Court in New York partial relief from the automatic stay, 11 U.S.C. § 362(f) (1982 & Supp. IV 1986), permitting them to protect their rights in the proceedings in Singapore. That relief was broadened in a July 27, 1987, ruling of the Bankruptcy Court, which accorded the banks complete relief from the stay with respect to the arrested vessels in exchange for the banks' agreement to provide post-petition financing to the debtor. At about the same time, the banks litigated the validity of their mortgages in Singapore and won judgments totaling $170 million. The vessels were then sold under the jurisdiction of the Singapore Court to corporate subsidiaries of the banks at a price of eight million Singapore dollars each.

The banks filed motions in the Singapore Court for a determination of priorities and payment of the proceeds of the sales. The seamen intervened with leave of the Singapore Court to assert *in rem* claims against the proceeds up to the amount of $320,000,[1] which represented the total payments necessary under the deductible clause of the insurance policies to trigger the insurers' liability for the remainder of the seamen's claims, once the vessels' liability is established. Ultimately, the Singapore Court distributed to the banks the balance of the proceeds after payment of local claims but retained $320,000 in an interest-bearing account pending final resolution of the dispute between the seamen and the banks. Central to that dispute is the fact that Singapore law generally gives a priority to a first preferred ship mortgage over the maritime lien arising from a personal injury aboard the ship whereas United States law gives the priority to the "preferred maritime liens" of the personal injury claimants, 46 U.S.C.App. § 953(b) (1982).

Rather than seeking to reduce their claims to judgment in Singapore, the sea-

---

1. $300,000 was needed to satisfy the deductibles for the three seamen with claims over $100,000 each. An additional $22,000 was necessary to satisfy in full the claim of the fourth seamen, whose claim fell below the deductible. How-

ever, the High Court of Singapore was apparently misinformed that the fourth seaman's claim was for $20,000. This accounts for the $320,000 total retained by the High Court.

men sought relief before the Bankruptcy Court in New York. They sought to have the July 27 order modified to require the banks to deposit the proceeds of the sales with the Bankruptcy Court so that the proceeds would be subject to the seamen's claim for the $320,000 in deductibles. When that relief was denied, they sought an order staying the denial ruling and also staying the banks' right to distribute the proceeds they had received. Upon denial of that request, the seamen appealed to the District Court and, upon affirmance, to this Court, challenging the rulings of the Bankruptcy Court granting the banks relief from the automatic stay, denying the seamen's request to require the banks to submit the proceeds to the jurisdiction of the Bankruptcy Court, and denying a stay of the Bankruptcy Court's rulings.

As the situation now stands, the seamen and the banks have a dispute pending before the High Court of Singapore and before this Court that ultimately concerns the seamen's claims for the last $320,000 of the proceeds from the sale of the mortgaged vessels. The seamen understandably prefer to press those claims before a court in the United States for at least two reasons. First, they hope to secure the benefit of United States law according a higher priority to their preferred maritime liens than to the liens based on the first preferred ship mortgages. Second, even if they persuade the Singapore Court to accord them priority over the banks and then endeavor to reduce their claims to judgment in Singapore, they apprehend that they will be obliged to establish in that forum the merits of their admiralty claims against the vessels; though they are prepared to prove their claims, they would prefer to do so in a United States forum.

However, their concern about the lien priorities in Singapore and about the burdens of litigating the merits of their admiralty claims in that forum both rest on conjecture as to how the High Court of Singapore will rule. That Court apparently views the lien priority issue as problematic since it went out of its way to retain the $320,000 pending some further consideration of the claims of the seamen and the

banks. If the High Court had thought that the banks were unquestionably entitled to priority over the seamen, it most likely would have disbursed the $320,000 to the banks when it adjudicated other priorities and disbursed all the other proceeds. We cannot be certain how the High Court will apply its local law of lien priorities to the facts of this case, nor even whether that Court will conclude that Singapore law, rather than United States law, applies to the priority issue.

Moreover, if the High Court should rule that the seamen are entitled to the $320,000 upon establishment of their injury claims, it is by no means certain that the Court will oblige the seamen to incur the expense of presenting their testimony and that of other necessary witnesses in Singapore. The High Court might well be receptive to alternative arrangements, such as accepting deposition testimony or abiding by the outcome of an adjudication of the merits in a declaratory judgment action before a United States forum, perhaps, if the parties agree, an arbitration forum.

Under the circumstances, we believe the High Court should have an opportunity, upon application of the seamen, to rule with respect to both the priority issue and the procedures acceptable to it for adjudicating the seamen's claims on the merits. Since a resolution of those matters favorable to the seamen will in all likelihood render moot the issues now pending before us, we believe it appropriate to require the seamen to seek favorable rulings from the High Court before pursuing this appeal. Of course, we cannot forecast how the High Court will rule nor even whether it will be willing to rule as long as aspects of the controversy remain unresolved in the courts of this country. We have no desire to consign the seamen to a jurisdictional limbo while the courts of two countries perform a gastonette, each awaiting a first move by the other. We simply believe that the High Court should be presented with an opportunity to make rulings that may end the controversy. Toward that end, we will order that the pending appeal is dismissed without prejudice to reinstatement within thirty days after a ruling by the High Court of Singapore upon motions by

the seamen seeking to establish their priority to the retained $320,000 and requesting a convenient means of adjudicating the merits of their injury claims, such motions to be filed within ninety days of the issuance of our mandate. The seamen may also obtain reinstatement in the event such motions are filed within ninety days and are not adjudicated within six months thereafter. In the event of reinstatement, this panel will retain jurisdiction.

Appeal dismissed without prejudice to reinstatement in accordance with this opinion.