884 F.2d 1566
 1989 A.M.C. 2880
 In re McLEAN INDUSTRIES, INC., et al., Debtors.
John E. BRITTAIN, Hamood Ahmed Gazali, Julian Garcia and
Abdo Nadeesh, Appellants,
v.
UNITED STATES LINES, INC., Bank of America National Trust
and Savings Association and Citibank, N.A., das Co-Managers
for Bank of America National Trust and Savings Association,
Citibank, N.A., Chemical Bank, Bankers Trust Company,
Continental Illinois National Bank and Trust Company of
Chicago, Marine Midland Bank and Security Pacific National
Bank, Appellees.
 No. 1268, Docket 88-5006.
 United States Court of Appeals,
Second Circuit.
 Submitted March 23, 1989.
Decided Sept. 12, 1989.
 
 Alan H. Buchsbaum, Leon Stand, Semel, Patrusky & Buchsbaum, New York City, submitted a brief for appellants.
 Deborah A. Skakel, Alan W. Kornberg, Milbank, Tweed, Hadley & McCloy, New York City, submitted a brief for appellee, U.S. Lines, Inc.
 (Amy R. Wolf, Scott K. Charles, Theodore A. Ulrich, William S. Busch, Wachtell, Lipton, Rosen & Katz, Cadwalader Wickersham & Taft, New York City, submitted a brief for remaining appellees.)
 Before NEWMAN, KEARSE and CARDAMONE, Circuit Judges.
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 On this bankruptcy appeal, we consider whether four seamen, injured on ships of the debtor, have any valid complaint against rulings that permitted creditor banks to obtain funds resulting from the sale of the ships pursuant to proceedings in the High Court of Singapore. The matter is before us on a reinstated appeal from a judgment of the District Court for the Southern District of New York (Richard J. Daronco, Judge) affirming orders of the Bankruptcy Court (Howard C. Buschmann, III, Judge) in Chapter 11 proceedings of the debtor, United States Lines, Inc. Those orders granted relief from the automatic stay, approved post-petition financing, and denied a request to compel the banks to subject to the jurisdiction of the Bankruptcy Court the funds they obtained in the proceedings in Singapore. We affirm.
 
 Facts
 
 2
 The seamen were injured while aboard three different vessels of the debtor. They have asserted claims for $1,000,000, $800,000, $600,000, and $22,000. The injuries are covered by insurance policies of the debtor containing a $100,000 per case deductible clause. The policies specify that the insurer is not liable if the debtor is unable to satisfy the deductible. The seamen contend that they cannot recover under the policies unless they are paid the amount of their claims up to the first $100,000. In their view, success in the pending litigation is vital to their opportunity to collect under the policies. The debtor disputes this contention, arguing that a provision in the proposed plan of reorganization involving the distribution to the seamen of stock in the reorganized company and payments from an escrow fund will suffice to obligate the insurers to pay the seamen's claims once those claims are liquidated. We express no views on this aspect of the dispute.
 
 
 3
 The creditor banks, appellees here, had issued letters of credit to enable United States Lines to purchase twelve container ships. As security for the letters of credit, the banks received a first preferred ship mortgage on each vessel. In November 1986 the debtor filed its Chapter 11 petition.
 
 
 4
 One month later the vessels on which the seamen had been injured and on which the banks held mortgages were arrested in Singapore on writs issued by the High Court of Singapore upon complaints of local creditors who had supplied goods and services. Thereafter, the banks requested and received from the Bankruptcy Court in New York partial relief from the automatic stay, 11 U.S.C. Sec. 362(f) (1982 & Supp. V 1987), permitting them to protect their rights in the proceeding in Singapore. On July 27, 1987, in an order challenged on this appeal, the Bankruptcy Court granted the banks complete relief from the stay with respect to the arrested vessels in exchange for the banks' agreement to provide post-petition financing to the debtor. In accordance with the terms of the banks' ship mortgages, the order provided that funds advanced by the banks would be secured by the existing mortgages; the banks advanced $3,500,000. The order also permitted any party claiming rights in the arrested vessels to pursue its remedies in the Singapore proceeding. Notice of the motion seeking entry of the July 27 order had been given to the creditors' committee, the United States Trustee, and all parties who had requested notice pursuant to Bankruptcy Rule 2002. The seamen had not made such requests and did not receive notice.
 
 
 5
 The banks litigated the validity of their mortgages in Singapore and won judgments totaling $170 million. The vessels were then sold under the jurisdiction of the Singapore Court to corporate subsidiaries of the banks for 8 million Singapore dollars each (approximately 4 million U.S. dollars). Thereafter the banks filed with the Singapore court motions for determination of the priority of their liens and for payment of the sale proceeds. The seamen intervened and asserted in rem claims for the $322,000 they sought from the debtor to trigger insurance coverage for their injuries. The Singapore court then distributed to the banks the proceeds of the sales, but retained $320,000 (which the Court thought was the amount of the seamen's claims) pending resolution of the dispute between the seamen and the banks. Central to that dispute is the fact that Singapore law generally gives a priority to a first preferred ship mortgage over the maritime lien arising from a personal injury aboard the ship whereas United States law gives the priority to the "preferred maritime liens" of the personal injury claimants, 46 U.S.C. Sec. 953(b) (1982).
 
 
 6
 Rather than reduce their claims to judgment in Singapore, the seamen filed in the Bankruptcy Court a motion to "clarify" the July 27 order by amending it to require the banks to deposit the proceeds from the sale of the vessels with the Bankruptcy Court. When that relief was denied on October 7, they sought an order staying the denial ruling and also staying the banks' right to distribute the proceeds they had received. Upon denial of that request on October 15, the seamen appealed to the District Court, and upon affirmance there, to this Court. On our first encounter with this appeal, we dismissed the appeal without prejudice to reinstatement in order to afford the Singapore court an opportunity to make rulings with respect to the seamen's claims that might have mooted the issues before us. Brittain v. United States Lines, Inc. (In re McLean Industries, Inc.), 857 F.2d 88 (2d Cir.1988).
 
 
 7
 On March 3, 1989, in an unreported order, we granted the motion of the seamen to reinstate the appeal after the Singapore court indicated that it was about to distribute the remaining $320,000 to the banks. We also ordered the banks to deposit with the District Court the $320,000 upon distribution in Singapore, pending the outcome of this appeal. Having been informed by counsel for the seamen that the Singapore court preferred that United States courts adjudicate the relative rights of the seamen and the banks to the disputed funds, we also invited the Singapore court, if its views had been correctly reported, to state that preference in its final order of distribution. On March 10, 1989, the Singapore court ordered the $320,000 distributed to the banks. In doing so, the High Court announced, according to the uncontroverted affidavit of the banks' Singapore counsel, that the report of its views as conveyed to this Court had been "wholly inaccurate." The High Court denied the seamen's request that the distribution order be entered without prejudice to proceedings in the United States courts.
 
 Discussion
 
 8
 Initially, the parties dispute what is before us, a dispute that implicates the standard of review. The seamen contend that we should review the July 27 order of the Bankruptcy Court, which, they assert, was given plenary consideration by the District Court. The banks reply that the seamen filed notices of appeal to the District Court only from the October 7 and October 15 orders of the Bankruptcy Court. They urge us to consider only the lawfulness of these orders and to affirm summarily since the Bankruptcy Court did not exceed its discretion in declining to amend the July 27 order nor in declining to stay the October 7 order. Technically, we have before us for review the District Court's judgment affirming the October 7 and October 15 orders appealed to that Court. Though we could inquire only whether the District Court was correct in ruling that those two orders were within the discretion of the Bankruptcy Court, we prefer to accept for review the underlying issues concerning the July 27 order.
 
 
 9
 To whatever extent the seamen are continuing to press the claim, advanced in the Bankruptcy Court, that the banks somehow precipitated the arrest of the vessels in a jurisdiction where their liens would have priority over the seamen's liens, that claim must be rejected. As the Bankruptcy Court properly ruled, there is no factual support for this allegation.
 
 
 10
 The seamen's basic claim is that the July 27 order is invalid as to them because they were given no notice of the request for its entry. They have no valid complaint on this score, however, because the lack of notice, even if notice was due the seamen despite their failure to request it pursuant to Rule 2002, did not have any adverse consequence. See In re Photo Promotion Associates, Inc., 53 B.R. 759 (Bankr.S.D.N.Y.1985). There was no valid objection available to the order granting all parties relief from the automatic stay to pursue their remedies in the Singapore court. Had there been no bankruptcy proceeding, the seamen would have been obliged to enforce their liens before the forum exercising in rem jurisdiction over the vessels. Nor can the seamen complain that they were not heard in opposition to the request to permit post-petition financing secured by the existing ship's mortgages. Since the amount of the banks' liens, even prior to the post-petition financing, far exceeded the proceeds from the sale of the vessels, the inclusion of the post-petition advances under the banks' liens did not deprive the seamen of any proceeds that the Singapore court would have awarded them.
 
 
 11
 The seamen are understandably distressed that Singapore law accords the banks' lien a priority higher than their own, whereas the reverse situation would have applied to assets subject to the jurisdiction of the Bankruptcy Court. But that consequence results from a combination of the arrest of the vessels in Singapore, the law of that jurisdiction, and the general rule that the law of the forum administering the res governs the priority of liens. See Gulf Oil Trading Co. v. Creole Supply, 596 F.2d 515, 521 (2d Cir.1979).
 
 
 12
 Victrix Steamship Co. v. Salen Dry Cargo A.B., 825 F.2d 709 (2d Cir.1987), does not aid the seamen. We there deferred to a foreign bankruptcy proceeding that could acquire for the estate the equity in a ship arrested here. In the pending case, the debtor had no equity in the vessels arrested in Singapore. In any event, even if the facts of Victrix were comparable to this case, our decision to defer in Victrix would not be binding upon the Singapore court, which was fully entitled to distribute the proceeds as it did. Its judgment extinguished the seamen's liens against the arrested vessels, and the distribution order of that court placed the funds in the hands of the bank free and clear of the seamen's claims. See Gulf Oil Trading Co. v. Creole Supply, supra. Though we exercised jurisdiction over those funds by requiring their deposit in order to have an opportunity to consider appellants' claims, we have no authority to award them to the seamen.
 
 
 13
 We have considered the seamen's remaining claims and conclude that they are without merit. Accordingly, the judgment of the District Court is affirmed, and the deposited funds shall be returned to the banks with all interest earned to the date of withdrawal from the registry of the District Court. No costs.